**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LOUIS MEDLEY       Plaintiff, | : : : | |
| v. | : : | CASE NO. 1:15-CV-01261 |
| UNITED STATES OF AMERICA,       Defendant. | : : | |

*M E M O R A N D U M*

Plaintiff, a federal inmate, sues the Government under the Federal Torts Claim Act ("FTCA"). The parties currently object to Chief Magistrate Judge Martin Carlson's Report on the Government's motion to dismiss or, in the alternative, for summary judgment. According to Judge Carlson, the Government's motion should be granted to the extent the complaint includes a medical-malpractice claim, for Plaintiff's failure to file a Certificate of Merit ("COM"), and denied to the extent the complaint includes an ordinary-negligence claim. The Government argues that Plaintiff's complaint sounds only in medical malpractice, for which a COM should have been filed, but wasn't, warranting outright dismissal. By contrast, Plaintiff argues that his complaint sounds in ordinary negligence, meaning that no COM was required and no portion of the complaint should be dismissed.

Having conducted a *de novo* review, the Court, like Judge Carlson, liberally construes the complaint to include two negligence claims: ordinary negligence and medical malpractice. Thus, the Court will adopt Judge Carlson's Report; overrule the parties' objections; and grant in part and deny in part the Government's motion.

*I.     Background and Procedural History*

On June 29, 2015, Plaintiff appeared *pro se* and filed a complaint. In the complaint, Plaintiff alleges that he was exposed to Tuberculosis ("TB")[1] when, in 2013, inmate Jesus Dominguez ("Dominguez") was placed into his prison unit while infected with active TB. Afterwards, there was an outbreak of the disease and, since his exposure *via* Dominguez, Plaintiff has tested positive for latent TB. Never before had Plaintiff tested positive.

After Plaintiff tested positive for latent TB, he filed an administrative tort claim in which he sought $10,000,000 and claimed that personnel at USP Canaan negligently placed him in a housing unit with Dominguez.[2] (See Doc. 1 at p. 16). On May 1, 2015, Plaintiff's request for reconsideration of his administrative tort claim was denied. (See id.).

Plaintiff currently sues the Government under the FTCA. The claim is grounded in the tort of "negligence." And Plaintiff seeks damages totaling $1,000,000. (See id. at ¶ 29).[3]

When this case began, moreover, Plaintiff filed two motions to proceed *in forma pauperis*; both motions were granted. (See Docs. 2, 6, & 8). Thereafter, the Government, which waived service, informed Plaintiff that he was required to file a COM

---

[1]     "TB is an infectious disease caused by a bacteria, Mycobacterium Tuberculosis. Individuals with active TB will show symptoms of the disease while those with latent TB are infected but asymptomatic. An individual with latent TB has a small possibility of developing active TB at a later point in time." *Michel v. Levinson*, 437 F. App'x 160, 161 n. 1 (3d Cir. 2011)(per curiam).

[2]     The Government directs the Court to "Doc. 1, Exhibit B, Adm. Claim, par. 4" for proof Plaintiff "discretely" claimed that "the United States 'failed in its preventative practices to cointene [quarantine] inmate Jesus Dominguez from Canaan's general population to prevent spread of TB.'" (Doc. 41 at 2). The Court, however, cannot find this in the present record.

[3]     The amount of damages Plaintiff seeks in this lawsuit is for less than what he sought in his administrative tort claim. This is permissible. See 28 U.S.C. § 2675(b)("Action under this section shall not be instituted for any sum *in excess* of the amount of the claim presented to the federal agency . . . .")(emphasis added).

2

because his complaint sounded in medical malpractice. (See Doc. 13). Given his failure to file a COM, the Government also put Plaintiff on notice of its intention to file a motion to dismiss. (Id.). Plaintiff responded, stating that his complaint sounded in ordinary negligence. (See Doc. 16).

On November 16, 2015, the Government filed its motion to dismiss or, in the alternative, for summary judgment. (Doc. 17). In the motion, the Government construed the complaint as sounding in medical malpractice and argued that: (1) expert testimony is required and Plaintiff has not presented any to corroborate his claims; (2) the claim should be dismissed for Plaintiff's failure to file a COM in accordance with Pennsylvania law; and (3) Plaintiff cannot show a breach of duty because "the medical staff were not negligent in [Plaintiff's] medical care." (See Doc. 20).

Plaintiff opposed. (Doc. 29). First, Plaintiff argued that, insofar as the Government sought summary judgment, the motion should be denied because there had not been time for adequate discovery. Second, Plaintiff contended that his complaint does not require a COM because it sounds only in ordinary negligence, regarding the screening and placement of Dominguez.

On April 6, 2016, Judge Carlson issued a Report, liberally construing the complaint to include two claims: "First, according to [Plaintiff,] prison officials negligently failed to follow their own protocol for screening inmates for [TB] and placed a [TB] inmate in [Plaintiff's] prison housing unit, exposing him to [the disease], which he contracted in a latent form. [Plaintiff's] complaint may also be liberally construed as bringing a claim of medical malpractice against prison medical staff." (Doc. 33 at 1). Since Plaintiff did not file a COM, Judge Carlson recommends that the Government's motion be granted in part, to the

3

extent Plaintiff files a medical-malpractice claim. Judge Carlson, though, recommends that the Government's motion be denied to the extent Plaintiff files an ordinary-negligence claim, related to the screening and placement of Dominguez. In reaching the latter recommendation, Judge Carlson also provides the following:

> In this case, [Plaintiff] asserts, and we find, that the complaint in part alleges administrative negligence in the screening and placement of inmates with infectious diseases. These allegations do not necessarily arise out of actions that occurred between [Plaintiff] and prison medical providers in their professional relationship, and this conduct was not an integral part of rendering medical treatment to [Plaintiff]. Rather, [Plaintiff's] complaints on this score arose prior to any medical treatment of [Plaintiff] due to what he alleges were negligent inmate placement decisions. Such matters are sufficiently administrative in nature to sound in ordinary negligence, and therefore would survive [the Government's] motion . . . ."

(Id. at 14). The parties object. (See Docs. 40 & 44).

The Government's position is that the complaint should solely be construed as sounding in medical malpractice and outright dismissed. To that end, the Government agrees with Judge Carlson that any claim relating to Plaintiff's medical treatment, after he tested positive for latent TB, should be dismissed for Plaintiff's failure to file a COM. The Government, though, asserts that Plaintiff's claim tied to the screening of inmates for TB "inexorably" sounds in malpractice since the conduct involved is an integral part of the process of medical treatment. (See Doc. 41; Doc. 47 at 3).

Plaintiff's position is that that the complaint solely concerns the screening and placement of Dominguez into his (Plaintiff's) prison unit, sounding in ordinary negligence, to which no COM was required, meaning also that no portion of the complaint should be dismissed.

4

*II. Legal Standards*

The Court must make a *de novo* determination of those parts of a Magistrate Judge's Report to which timely and specific objections are made. See *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984); 28 U.S.C. § 636(b)(1). In conducting a *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the Magistrate Judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993)(McClure, J.). Although the review is *de novo*, the law permits the Court to rely on the recommendations of the Magistrate Judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994)(Kosik, J.). Where no party objects, the Court needs only review a Magistrate Judge's Report for clear error or manifest injustice. See *Smith v. Lindsey*, No. 13-CV-2914, 2015 WL 136639, at *2 (M.D. Pa. Jan. 7, 2015)(Caldwell, J.); see also, *Thomas v. Arn*, 474 U.S. 140, 154 (1985) (explaining that while 28 U.S.C. § 636 "does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard").

Given the parties' objections in this case, the Court will conduct a *de novo* review of Judge Carlson's Report. The following standards are also relevant.

*A. Rule 12(b)(6)*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court is authorized to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

As well, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### B. Rule 56

After time for adequate discovery and upon motion, Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To determine whether summary judgment is appropriate, courts rely upon cited evidence in the record, see Fed.R.Civ.P. 56(c), and view the evidence in the light most favorable to the non-moving party. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). At this stage, however, a court may not make credibility determinations or weigh evidence. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 655 (3d Cir. 2002).

"A fact is 'material' if 'proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case.'" *Militello v. Allstate Property and Casualty Ins. Co.*, No. 1:14-CV-0240, 2015 WL 7300520, at *6 (M.D. Pa. Nov. 18, 2015)(Rambo, J.)(quoting *Burke v. Transam Trucking, Inc.*, 605 F. Supp. 2d 647, 650 (2009)(Conaboy, J.)). Accordingly, substantive law will operate to identify which facts are "material." "An issue of material fact is genuine if 'the evidence is such that a reasonable jury might return a verdict for the non-moving party.'" *Id.*

"The moving party has the initial burden of proving that no genuine issue of material fact exists." *Militello, supra*, at *6 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); see *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011)(explaining movant's summary-judgment burden when that party also bears the burden of proof at trial); *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007)(same); cf. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992)(explaining movant's summary-judgment burden when that party does not have the trial burden on the underlying claim). If the moving party's summary-judgment burden is satisfied, "the [summary-judgment] burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Santini*, 795

F.3d at 416 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); see *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)(describing summary judgment for the non-moving party as "'put up or shut up' time").

### III. Discussion

Plaintiff brings suit against the Government under the FTCA, which is a permissive vehicle for him to seek relief for injuries sustained while imprisoned. *Zierke v. United States*, No. 3:14-CV-0350, 2016 WL 1189399, at *4 (M.D. Pa. Mar. 22, 2016)(Nealon, J.)(citing 28 U.S.C. § 2674). But "[t]he FTCA does not create a substantive cause of action against the United States[; instead, it] provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court." *Id.* "Hence, in an FTCA action, the district court applies the [tort] law of the state in which the act occurred." *Id.* (citing 28 U.S.C. § 1346(b); *Castillo v. United States*, 44 F. App'x 732, 735 (7th Cir. 2002)). Accordingly, "[t]he United States may only be held liable under the FTCA if a private person would be liable under the tort law of the state where the conduct at issue occurred." *Id.* (citing 28 U.S.C. § 1346(b)(1)).

In this case, Plaintiff's alleged injuries occurred at USP Canaan, in Waymart, Pennsylvania. The Commonwealth's tort law applies.

As mentioned, Plaintiff's FTCA claim is grounded in the tort of "negligence." Judge Carlson construes the complaint to include two "negligence" claims: ordinary negligence and medical practice. At the heart of the parties' objections is their disagreement with this construction of the complaint.

Pennsylvania courts define medical malpractice "as the 'unwarranted departure from generally accepted standards of medical practice resulting in injury to a

patient, including all liability-producing conduct arising from the rendition of professional medical services." *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. Ct. 2007)(quoting *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003)). "[T]o prevail in a medical malpractice action, a plaintiff 'must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'" *Toogood*, 824 A.2d at 1145 (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (1997)). While these are the same basic elements needed to prevail in an ordinary-negligence action, medical-malpractice claims are distinguished by two defining characteristics: (1) "medical malpractice can occur only within the course of a professional relationship" and (2) "claims of medical malpractice necessarily raise questions involving medical judgment." *Ditch*, 917 A.2d at 322 (Pa. Super. Ct. 2007)(quoting *Grossman v. Barke*, 868 A.2d 561, 570 (2005)).

To "ascertain [a claimant's] theory of liability, i.e., deviation from a professional standard of care or ordinary negligence, [Pennsylvania courts] examin[e] the averments in the complaint." *Gondek v. Bio-Medical Applications of Pennsylvania, Inc.*, 919 A.2d 283, (Pa. Super. Ct. 2007)(citing *Ditch*, 917 A.2d at 321). "[W]here a complaint is predicated upon facts constituting medical treatment, that is, when it involves diagnosis, care and treatment by licensed professionals, the action must be characterized as a [malpractice] action." *Ditch*, 917 A.2d at 322 (quoting *Yee v. Roberts*, 878 A.2d 906, 912 (Pa. Super. Ct. 2005)). Stated differently, a complaint should be characterized as sounding in medical malpractice where "the conduct at issue constituted an integral part of the

process of rendering medical treatment." *Ditch*, 917 A.2d at 323 (quoting *Grossman*, 868 A.2d at 570).

Furthermore, unlike for ordinary-negligence claims, which tend to raise issues within the common knowledge and experience of a layperson, *Grossman*, 868 A.2d at 570 (citation omitted), "the negligence of a physician [can] encompass[] matters not within the ordinary knowledge and experience of laypersons[, requiring medical-malpractice claimants to provide] expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 255 (citing *Hightower-Warren*, 698 A.2d at 54). Expert testimony is not required, however, when the alleged negligence is obvious or within the realm of a layperson's understanding. *Ditch*, 917 A.2d at 323 (quoting *Grossman*, 868 A.2d at 567). Accordingly, the need for expert testimony in a medical-malpractice action will turn on the facts and averments in each case. *Id.* (citing *Grossman*, 868 A.2d at 567).

In addition, Rule 1042.3 of the Pennsylvania Rules of Civil Procedure provides:

Rule 1042.3 Certificate of Merit

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals

10

>    for whom this defendant is responsible deviated from an acceptable professional standard, or
>
>    (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a)(1-3)(internal explanatory notes omitted). A COM functions to ensure that professional-liability claims are meritorious and to prevent waste of judicial time and resources. See *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-63 (3d Cir. 2011); accord *id.* at 264-65 (holding that the COM requirement is substantive law under the *Erie* Rule[4] and must be applied by federal courts). Federal courts may dismiss a case when a plaintiff, even one proceeding *pro se*, was required to file a COM, but did not do so. See *Brownstein v. Gieda*, No. 3:08-CV-1634, 2009 WL 2513778, at *3 (M.D. Pa. Aug. 13, 2009)(Munley, J.); see also, e.g., *Hodge v. Department of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010)(affirming district court's dismissal of medical-negligence claim for failure to file a COM).

Of course, a COM is not required in every case in which a professional-negligence (or -liability) claim is raised. The Supreme Court of Pennsylvania has held that Rule 1042.3 is "expressly cabin[ed]" to claims "asserted against a licensed professional 'by or on behalf of a patient or client of the licensed professional.'" *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 74 (Pa. 2014)(quoting Pa. R. Civ. P. 1042.1(a)). In turn, "patient" means "one under medical care" and "'client' means "a person who engages[, employs, or retains] the professional services of another." See *id.* at 75 (internal quotations and citations omitted).

Here, the precise contours of Plaintiff's "negligence" claim(s) in the complaint are unclear. The Court, however, can see why Judge Carlson liberally construes the complaint to include a medical-malpractice claim. Plaintiff not only seeks damages for,

---

[4]  A reference to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

among other things, the negligent "refusal to treat [him] (medically) (sic)," but there are also subtle hints throughout the complaint that could be liberally construed as giving rise to a medical-malpractice claim relating to his medical care and treatment. Such a claim moreover would be subject to dismissal since Plaintiff has not filed a COM.

Likewise, the Court liberally construes the complaint as also being grounded in the theory that, contrary to BOP policy, (see Doc. 21-3 at 42-63), *and not pursuant to any medical judgment*, Dominguez was *not* screened before he was placed into the same prison unit with Plaintiff, resulting in injury to him in the form of acquiring latent TB. To that end, Plaintiff includes allegations suggesting, and has continuously argued throughout this case, that the basic premise for liability is aimed in that direction; and said premise does not necessarily raise a question involving medical treatment. The question, instead, is aimed at whether the officials at USP Canaan, through an administrative failure, acted with negligence by not at all screening Dominguez, despite being required to do so under BOP policy. Viewed in this light, the Court liberally construes Plaintiff's complaint to also sound in ordinary negligence. See *Salter v. United States*, No. 3:09-CV-1409, 2014 WL 1365905, at *25 (M.D. Pa. Apr. 7, 2014)(Mariani, J.)("Because the conduct giving rise to [the plaintiff's] claim involves alleged administrative failures rather than medical malpractice, the Complaint sounds in ordinary negligence and [the plaintiff's] claim will be treated as such."). Plaintiff was not required to file a COM on this claim and expert testimony is not necessary.[5]

---

[5] The Government has not moved for dismissal or summary judgment for Plaintiff's failure to exhaust administrative remedies. It is also unclear from the present record what Plaintiff particularly asserted in his administrative tort claim. Furthermore, the Court is inclined to give Plaintiff an opportunity to conduct adequate discovery before ruling on any motion for summary judgment regarding whether Dominguez was screened in accordance with BOP protocols, before he was placed into Plaintiff's prison unit. Lastly, in light of *Bruno, supra*, the Court questions whether a COM would be required if the claim in the complaint, involving Dominguez, could be construed as one for medical malpractice.

*IV.     Conclusion*

Based on the Court's *de novo* review, the Court will adopt Judge Carlson's Report, in which he liberally construes the complaint to include two negligence claims (i.e., ordinary negligence and medical malpractice) and recommends that the Government's motion should be granted in part and denied in part. The Court will also overrule the parties' objections. Last, the Court will grant in part and deny in part the Government's motion. An appropriate order will follow.

/s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

**Date Signed**: July 19, 2016