UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LOUIS MEDLEY,  :
:
    Plaintiff,  :
:  CIVIL NO. 1:15-CV-1261
    v.  :
:
UNITED STATES OF AMERICA,  :
:
    Defendant.  :

*O R D E R*

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On June 29, 2015, *pro se* Plaintiff Louis Medley, a federal inmate housed in a United States Penitentiary in Canaan Township, Pennsylvania (USP-Canaan), filed a complaint against Defendant, the United States, which was liberally construed as alleging two claims of negligence pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671.  (Docs. 1 & 48).  The complaint alleges that Bureau of Prison (BOP) officials at USP-Canaan negligently failed to follow their own protocol for tuberculosis (TB) and placed an inmate with TB in Medley's prison housing unit, exposing him to TB, which he later contracted in latent form.  (Doc. 1 ¶¶ 12, 18-29).  Specifically, the complaint states that BOP officials at USP-Canaan "failed through deliberate neglect to take adequate precautions before and after the disease (TB) outbreak, causing [Medley] . . . to be exposed and infected with said infectious disease."  (Doc. 1 ¶ 18).  The complaint also suggested allegations of medical malpractice, noting that prison officials were negligent in their "deliberate refusal to treat [Medley] (medically) for" TB.  (Id. at ¶ 29).  Medley also filed motions to proceed *in forma pauperis* (IFP), which were granted.  (Docs. 2, 6, & 8).

On November 16, 2015, Defendant filed a motion to dismiss or, in the alternative, for summary judgment, and argued that Medley's complaint sounded solely in medical malpractice and should be dismissed for failure to provide expert testimony or a certificate of merit.  (Docs. 17, 20 at 2).  While that motion was pending, Medley filed a motion to appoint counsel.  (Doc. 28).  On January 12, 2016, the court denied the motion to appoint counsel "at the present time," and noted that Medley's "request is made at a time when a potentially dispositive summary judgment motion is pending," and that "it would be inappropriate to appoint counsel until [the court had] the opportunity to" assess whether Medley's claims had arguable legal merit.  (Doc. 30 at 1, 3).  Simultaneous with his motion to appoint counsel, Medley responded to Defendant's summary judgment motion and sought to "clarify the extent of his 'negligence' claim," contending that "his claim is directed towards the prison officials in general because [they] . . . are charged with the duty of providing a reasonably safe place of confinement."  (Doc. 29 at 4-5).

On July 19, 2016, upon recommendation from Magistrate Judge Martin Carlson (Doc. 33), this court granted in part and denied in part Defendant's motion to dismiss.  (Docs. 48-49).  Defendant's motion was granted to the extent that Medley's complaint claimed medical malpractice, but was denied as to its ordinary negligence claim. (Id.)  The only claim remaining in this action is Medley's ordinary negligence claim.

Following several notable issues throughout the discovery process related to Medley's inability to appropriately and clearly articulate his request for pertinent documents connected to his claim (Docs. 59, 61-67), Defendant filed a motion for summary judgment on Medley's ordinary negligence claim.  (Doc. 69).  On February 15, 2017, Judge Carlson issued a Report and Recommendation in which he stated that this

case "aptly illustrates the procedural hurdles which can confront a *pro se* litigant in federal court"—especially an incarcerated inmate proceeding IFP. (Doc. 80 at 1). "Confronted with an inmate who has struggled to understand discovery procedures, but seems to consistently convey a need for specific relevant and discoverable information" before responding to Defendant's summary judgment motion, Judge Carlson recommended deferring action on Defendant's motion to allow further narrowly tailored discovery pursuant to Federal Rule of Civil Procedure 56(d). (Id. at 3, 14).

We agree with the thorough analysis in Judge Carlson's report and will adopt it in full; therefore, action on Defendant's summary judgment motion will be deferred pending further narrowly tailored discovery. We also believe that appointment of counsel should be considered at this juncture. Our independent review of the record reveals legal privacy issues presented by Defendant's objections to Medley's requests for TB-related information from a specific inmate's medical records who Medley believes was the source of the TB-outbreak at USP-Canaan, as well as other notable discovery-related issues as to the breadth of Medley's discovery requests and his inability to comply with the Federal Rules of Civil Procedure. (Doc. 59-1 at 2-6).[1] Assistance of counsel may not only be appropriate, but may alleviate some of the issues presented in Judge Carlson's report.

Although "indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel," district courts have the "statutory authority to 'request' appointed counsel for indigent civil litigants." Montgomery v. Pinchak, 294 F.3d

---

[1] This court also notes that the record reveals other issues that have complicated discovery in this case, such as discovery materials being incorrectly sent to an inmate at Dauphin County Prison instead of Medley, (Doc. 53), as well as several premature motions by Medley to extend the discovery deadline, (Docs. 51-52, 57-58). It also appears that because Medley is an inmate, the delay in his receiving court documents has impacted discovery. For example, despite an order requiring the parties to provide a discovery status report before November 28, 2016, Medley filed the status report late "due to an institutional emergency at [USP-Canaan]." (Doc. 63-2 at 2).

3

492, 498 (3d Cir. 2002); 28 U.S.C. § 1915(e)(1). District courts have "'broad discretion' to determine whether appointment of counsel in a civil case would be appropriate," and may make the decision to request counsel *sua sponte*. Montgomery, 294 F.3d at 498. After it is determined that a claim has "some arguable merit in fact and law," a court should consider a number of factors to determine whether counsel may be necessary. Id. at 499. In Montgomery, for example, a *pro se* inmate plaintiff encountered multiple obstacles during discovery, "both in the resistance of the defendants [to the inmate's discovery requests] and in the intricacies of the discovery rules." Id. at 502. The Third Circuit concluded that because it "determined that [the inmate's] case has some potential merit, and since this case involves complex discovery rules with which [the inmate] was seemingly unable to comply, we find that [the inmate's] ability to present his own case is doubtful, and that this factor weighs in favor of appointing counsel." Id. As to the complexity of the issues involved, the court in Montgomery found that the inmate's inability to comply "with requirements for formulating discovery requests hindered the presentation of his claim" and resulted in "numerous technical rulings" against him. Id. at 503.

Here, when appointment of counsel was originally denied in this case, it had not yet been determined whether Medley's ordinary negligence claim contained sufficient merit to survive Defendant's motion to dismiss. Since that time, however, the record shows some factual basis, confirmed by the BOP, that there was a TB outbreak at USP-Canaan and that Medley later tested positive for latent TB.[2] Moreover, the record

---

[2] For example, a declaration by a registered nurse with the BOP confirms that, in August 2013, USP-Canaan "received information of a possible exposure of inmates at the facility to an individual who tested positive for tuberculosis," and that the BOP "after receiving this notice . . . promptly took appropriate measures to identify any additional incidents of exposure as well as provided appropriate treatment to any inmate in need of preventative care." (Doc. 63-1 at 26). The declaration confirms that Medley tested positive for latent TB in October 2013. (Id. at 27).

4

presents some complexity for Medley in navigating discovery issues related to the breadth of his requests and to the privacy (and potential disclosure) of fellow inmate medical records—issues which have been appropriately objected to and resisted by Defendant. The record also presents repeated arguments by Defendant resisting motions by Medley to compel discovery[3] because of Medley's failure to file a brief in support of the motion pursuant to M.D. Pa. Local Rule 7.5, and because Medley, a *pro se* inmate, did not first attempt to resolve the dispute with defense counsel before filing the motion, as required by Federal Rule of Civil Procedure 37(a)(1).  (See Docs. 61 & 66).

These issues are compounded by the record's clear indications of Medley's inability to present his own case in the form of repeatedly being unable to clearly tailor his discovery requests to comply with discovery rules.  For example, Medley requested "any and all" BOP "medical records" of a specific inmate "infected with [TB]" who Medley alleges was the source of the TB outbreak; Defendant vaguely objected to the request under the Privacy Act, 5 U.S.C. § 552(a).  (Doc. 59-1 at 2).  In denying Medley's request without prejudice, Judge Carlson reasonably interpreted it as being "for the production of the entire medical file of another prisoner," and therefore concluded that the request was overly broad.  (Doc. 62 at 7).  The wording of Medley's discovery request, however, is by no means clear whether Medley sought "wholesale disclosure" of the entire inmate's medical records, as Judge Carlson interpreted the request, or whether Medley intended to tailor the request in some manner to a redacted form of only TB-related information in the records.  Such inarticulate filings by Medley have plagued this case since its inception when it was unclear what claims were asserted in Medley's complaint.

---

[3] Medley's filing was labeled a "Reply to Defendant's Motion of Response and Objections to Plaintiff's First Request of Production of Documents."  (Doc. 59).

Acknowledging these discovery issues, Judge Carlson suggested six more specific interrogatories and document requests in his report, which may aid Medley when further narrowly tailored discovery proceeds in this case. (Doc. 80 at 15, ¶ 2). This court fully agrees with those recommendations, but notes that there may be other areas of inquiry for which Federal Rule of Civil Procedure 26(b)(1) may permit discovery.

ACCORDINGLY, this 28th day of March, 2017, upon consideration of Magistrate Judge Carlson's Report and Recommendation (Doc. 80) that Defendant's motion for summary judgment (Doc. 69) be DEFERRED pending further narrowly tailored discovery pursuant to Federal Rule of Civil Procedure 56(d), and, upon independent review of the record, and noting that no objections have been filed, IT IS ORDERED that:

(1) The Report and Recommendation (Doc. 80) is ADOPTED;

(2) Defendant's motion for summary judgment (Doc. 69) is DEFERRED pending further narrowly tailored discovery pursuant to Federal Rule of Civil Procedure 56(d);

(3) This case is REMANDED to Magistrate Judge Carlson with instructions to first consider whether appointment of counsel may be appropriate for Medley, and to next confirm from Medley that he is seeking narrowly tailored discovery into the following six discrete fields of inquiry:

- At the time of these events, did the Bureau of Prisons have protocols or procedures for screening inmates for communicable diseases like tuberculosis before they entered the prison system, were transferred from one institution to another, or entered an inmate population?

- If so, were these procedures followed in this case?
- Did the BOP identify the source of the outbreak of tuberculosis that affected Medley and other inmates at USP-Canaan?
- If so, when was the source of the outbreak identified?
- Was Medley exposed to the source of this outbreak, either directly or indirectly, once the source of infection had been identified?
- What steps, if any, were taken by BOP and prison officials at USP-Canaan before and/or after any tuberculosis outbreak to prevent Medley and other prisoners from exposure to tuberculosis?

(4) If Medley confirms the scope of his discovery demands is limited to these specific, narrowly tailored and relevant fields of inquiry, or if Medley submits any other specific and narrowly tailored discovery request permissible under Federal Rule of Civil Procedure 26(b)(1), Defendant should respond to those interrogatories and produce any documents relevant to these questions.

(5) Upon completion of discovery, the parties should notify the court regarding whether they wish to further pursue summary judgment, at which point supplemental briefing can be ordered in light of the additional completed discovery.

(6) Medley's motion for extension of time, (Doc. 76), is DISMISSED as moot.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge